Good morning. May it please the court, I'm Daniel Kaplan. I represent the appellant, David Hickey, and I'm going to try to watch the time and save two minutes for rebuttal. The court is aware that three circuit courts have addressed the non-delegation doctrine argument presented in this case so far, and each of those circuit courts has rejected it. The obvious question on the court's mind is, what did those courts miss? Those courts missed three important things. They missed the truly extraordinary nature of the delegation at issue in SORNA as compared to the prior delegations that courts have reviewed. Number two, they missed the fact that this delegation involved the expansion of federal criminal liability, which the Supreme Court has recognized may require a higher degree of specificity in a delegation. And number three, they missed the fact that the delegated power implicated particularly constitutionally sensitive matters. Turning to the first of those three factors, the extraordinary nature of this delegation. I did not find in any of the cases that the government cites or in any of the cases that were cited in my opening brief any delegation that was truly comparable to the delegation involved in SORNA. The reason the delegation doctrine has been quite limited and has been used to strike down legislation only a couple of times is that it is recognized that the necessity of government in our system calls for the legislative branch to be able to call upon the expertise of the executive branch to apply expert analysis to complicated matters. Isn't that what we're doing here? I mean, it seems to me that Congress made it pretty clear that what it wanted to do was to regulate those prior convicted sex offenders who travel in interstate commerce and fail to register. The problem is, first of all, we have to determine, are they a convicted sex offender? And as I understand the vagaries of sex offense legislation among the states, even in the Ninth Circuit, that's not an easy question to answer. So why wouldn't Congress want assistance from the Department of Justice in answering the question, first of all, who is subject to SORNA as a sex offender for whom registration is required? I don't disagree with your question. I don't disagree with the premise. In fact, there are other parts of SORNA that called upon the Attorney General to do exactly that sort of thing. And there is a thick set of guidelines that the AG issued pursuant to those proper delegations that are called the SMART guidelines that address questions just like that. But the particular provision of SORNA at issue here, even the wording of it is different. Those proper delegations say things like the Attorney General shall promulgate rules and regulations to implement the requirements of this part. They call upon the Attorney General to apply expertise to complicated matters like what you identified. But this particular provision of SORNA, even the phrasing is different. It says the Attorney General shall have the authority to proclaim the applicability. I should quote the exact language. It says that the Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act. All it's doing, it's not calling upon the Attorney General to apply particular factors. It's not calling upon the Attorney General to conduct studies, to meet with stakeholders, to hold hearings. And the Attorney General didn't do any of those things. It seems to me that this language does address what I just asked you about. Let's take, in Washington, you can be a convicted sex offender if you commit a crime with sexual motivation. For example, a burglary committed with sexual motivation is a sex offense, which triggers an obligation to register under Washington law. I don't know whether Arizona has anything comparable to that or not. But it seems to me that if Congress is enacting a sex offender registration law, there are a lot of unanswered questions as to what constitutes a sex offense which would trigger the registration requirement. Well, and there are definitions in the statute that address those questions. And I would understand questions like that to be things that this Court and other federal courts would address when those issues are raised in the context of a SORNA prosecution. But doesn't that language under you were quoting from, I think, section 16, 913, subsection D of Title 42? Yes. Doesn't that language cover my hypothetical? Well, the Attorney General clearly didn't think so, because the Attorney General in implementing this particular delegated power did not address complicated issues, did not bring to bear expertise on difficult questions like that. He issued a one-sentence regulation that said, yes, it does apply to anyone convicted before the effective date. So the Attorney General construed this delegation, just in the same sense that I'm representing it to you, as a very atypical, as far as I can tell, utterly unprecedented delegation of power simply to proclaim by ipsy dixit, this law shall extend, this federal criminal liability shall extend to this entire population of people to whom it would not extend but for that executive ipsy dixit. Now, the limitations on the delegation doctrine, on the nondelegation doctrine, as I said, are not intended to protect Congress's ability to call upon an executive official to vastly expand the scope of federal criminal liability by a simple ipsy dixit of this nature. They are designed to protect the application of expertise and analysis that the executive branch is uniquely situated to provide to difficult questions that arise in implementation. So I don't see that any of those three circuit courts that have addressed this question or the government in its response brief have really grappled with how truly exceptional and extraordinary this particular delegation is. The Attorney General's regulation shows this more clearly than I could convey to you by my argument. It's a one-sentence proclamation. In fact, the Attorney General said he didn't even think he had discretion. He did not – not only did he not exercise discretion, he said, I just think this is what Congress wanted. So in effect, the Attorney General is putting, you might say, the icing on the cake that Congress has handed to it, a simple punting of authority. Without addressing whether he can delegate or not, our court could certainly say in any particular case that it was improper to require X to register because his offense was not a sex offense. It was something else. And we certainly can do that easily and override the Attorney General if we find that he has not properly interpreted the statute. We do that kind of thing all the time. So I don't know why this is necessarily different. Well, if I understand the question, in a situation where the Attorney General has promulgated a regulation under power to him by Congress and a litigant argues before this Court that that delegated power has been misused in some way, this Court can review the exercise of the delegated power. But you can't do that here, and that's another reason this is a violation of the nondelegation doctrine, because there is no standard you can apply here. One of the purposes of the nondelegation doctrine is to ensure that when this Court is called upon to review the exercise of a delegated power, it is able to do that, that there is some standard set forth. Here, there is absolutely nothing. I would like to reserve the balance of my time, if I may. All right. Very well. Ms. Gell. May it please the Court. Joan Rufenach, District of Arizona, on behalf of the United States. In Section 169.13d, the authority was delegated to the Attorney General to determine whether or not SORNA should apply to any sex offenders convicted before the enactment. And the Supreme Court has said that legislative action does not amount to a forbidden delegation of legislative power if there are intelligible purposes set forth in the legislation. Reading SORNA as a whole, the delegation was appropriate and narrow. And the reason I say that is because in the statute itself, Congress has said the purpose of this statute is to protect the public from sex offenders and offenders against children and to establish a comprehensive national registry for those offenders. It recognized that the Wetterling Act, which was established in 1994, failed to accomplish a number of its purposes because that act had so many different definitions and the states implemented it in different manners. So what Congress wanted to do in SORNA is to make it a comprehensive system that was going to be more understandable and uniform across the entire United States. When it did so, it made a number of legislative decisions in the various other sections of SORNA that provided guidance for the Attorney General. What Congress did is they determined what crimes require registration, and that's in section 169.11. They determined where, when, and how registration should be accomplished in 169.13. They determined what information is required of registrants, and that's in 169.14. And finally, they provided the elements of the crime for failure to register. The government submits that with that background and the understanding of the purpose of SORNA, that the delegation of authority in this case simply determined to determine whether or not it applied to offenders who committed their offense prior to the enactment of SORNA was a very narrow and confined delegation that did not violate the non-delegation clause. With regard to, and I'm just realizing, I think that non-delegation was the only issue that was raised as opposed to due process, but I think that, Judge Fletcher, that you were pointing out that if you get to an as-applied application here, that there is a determination as to whether or not there was a, or there can be a determination of whether or not there was a due process violation by looking at what notice was given, and in this case, I'm back, I'm confusing myself with what I just said. So I'll stop at that. But if the Court has no questions with regard to. Ginsburg. But you should understand that if there are issues raised in the briefs, they are before us, and you can choose to comment or not, depending on whether you think that's appropriate. He's relying on the brief as to certain things, and maybe you want to also. Well, I'll submit that the Commerce Clause issue has been determined by this Court in George. So I'm not going to make argument with regard to that. With the George, in reading George, although the panel doesn't say it, one could extend George to cover this case where George was convicted in 2003 in Idaho, and then thereafter the enactment of SORNA moved to Washington where he failed to register. Those facts are identical to Mr. Hickey's case, although the delegation question apparently was not raised in George. At least I don't find it expressly addressed. I didn't find it correctly or directly addressed either. And as I noted in a footnote, that there appears in footnote 6 of the government's brief, it appeared to me when I drafted the brief that there was an argument to be made that there was language in the case that seemed to support that it did have retroactive application. But I've been instructed, and the Department's position is that juvenile mail governs this case or controls the case. I got your 28J letter, and I'm a little puzzled by that because how do you then distinguish the language in Judge Reinhart's opinion in juvenile mail from this case? Is it because this is an adult conviction versus a juvenile adjudication, which is less than guilt beyond a reasonable doubt? Yes, but also the statements made by Judge Reinhart with regard to the delegation clause suggest that the Attorney General's interim rule was a valid regulation. And if it was a valid regulation, then it was a proper delegation and a regulation, the interim regulation. So it would apply. I guess I'm less concerned about the validity of the regulation than I am about the actual holding, because the actual holding in juvenile mail says that you cannot force previously adjudicated juvenile delinquents who were found delinquent for sexual misconduct to the public opprobrium that attends public registration thereafter as an adult. Correct. And therefore, the district court could not require the juvenile defendant, delinquent, to register under SORNA. Correct. But the — So how do you distinguish that decision from this case? I believe that it was limited to the circumstance of juvenile offenders, offenders who were juveniles at the time that they committed the offense and then were no longer juveniles after SORNA was enacted. And this Court said that's a violation of the ex post facto clause because it contemplates a punishment that wasn't the purpose of the juvenile adjudication in the first place. And so under an ex post facto analysis, there was the concern by the Court that it added a punishment. It wasn't analyzed in terms of delegation like we have here. And I point out to the Court, there is some question as to the validity of the George case going forward after Carr, because George — my reading of George says George was prosecuted under the Federal law sex offense in addition to the travel clause. And the travel, George's travel was prior to SORNA's enactment. So that portion may no — no longer stands. I don't know whether it will stand under the Federal sex offense portion of the charge. Whereas here the travel occurred after the effective date of the statute. I'm sorry. Say that again. Whereas here with Mr. Hickey. Here it's very close. His — The travel occurred after the effective date. September of 2007 was the — was the travel date, in this case, the admitted travel date. The government will stand on the — oh, I guess I still have a few more minutes. If the Court wants to hear anything with regard to the issue of due process. I think not. Then we'll submit on the brief. Thank you very much, Counsel. Just briefly, I believe the George case does not control this case because the non-delegation argument was not addressed there and the question merely lurks in the record under the Supreme Court's decision Webster v. Paul. I'm sorry. You're dropping your voice. I'm sorry. The Supreme Court Webster v. Paul held that issues which merely lurk in the record are not considered precedent. I do want to — I do want to stress one of the other factors which I think the courts have so far overlooked in this issue, which is the fact that this delegation involves the expansion of Federal criminal liability, or as the Supreme Court phrased it in the Fahy decision, it makes Federal crimes of acts which had never been such before. In the Toobie case, the Supreme Court noted that its precedents may in fact require more specific guidance from Congress to the executive when this kind of delegation is at issue involving Federal criminal liability. But isn't the Federal crime here travel and interstate commerce and thereafter failing to register when you have previously been convicted of a sex offense? Yes. So that to me sounds like a very typical definition of a Federal crime. Well, when I say more specific guidance, I'm referring to the guidance that Congress gave to the Attorney General in how to exercise the power to declare that SORNA shall apply retroactively or shall not apply retroactively. And the guidance given was either nil, which I believe, or arguably slightly more than what the courts have looked at is simply the preamble to the statute that says our goal is to create a comprehensive national registry. That is all anyone anywhere has identified as anything that could constitute guidance. Now that, if anything, that's the minimal. And if there is more specific guidance required here, as under Toobie and the precedents noted there, I think there is, that minimal degree of guidance can't be enough. Okay. Thank you very much. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson